1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Juan Carlos Becerra,                    |   No. CV-24-00239-TUC-JAS (BGM)

10              Petitioner,                  |   **REPORT AND RECOMMENDATION**

11  v.

12  Ryan Thornell, et al.,

13              Respondents.

14

15       Before the Court is Petitioner Juan Carlos Becerra's Petition Under 28 U.S.C.

16  § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. 1.)  Respondents

17  filed a limited answer, (Doc. 14), and Becerra did not file a reply.  On February 21, 2025,

18  this matter was reassigned to Magistrate Judge Bruce G. Macdonald for a report and

19  recommendation.  (Doc. 15.)  The Magistrate Judge recommends that the District Court,

20  after its independent review, deny the petition and dismiss this case.

21                              **BACKGROUND[1]**

22       On October 14, 2015, Becerra's girlfriend, Yesenia [ ], and two other women[,]

23  confronted [woman #4] about telling other people that [Becerra], whom [woman #4] only

24  knew as "Juan," was a "jacker" who robs drug traffickers.  *State v. Becerra*, No. 2 CA-CR

25  2018-0258, 2020 WL 502976, at *1 (Ariz. Ct. App. Jan. 30, 2020).  The women were

26  ───────────────

27  [1] The Court adopts the facts in the background section as recited in *State v. Becerra*, No. 2
    CA-CR 2018-0258, 2020 WL 502976, at *1-2 (Ariz. Ct. App. Jan. 30, 2020).  Because the
28  facts are taken from the state appellate court's decision, they are afforded a presumption of
    correctness.  *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

1   driving in Yesenia's Cadillac on the southwest side of Tucson when they were pulled over

2   by a "black Impala or Malibu with red and blue lights flashing in the grill." *Id*.  The man

3   [woman #4] knew as "Juan" … emerged from the car, pistol-whipped [her,] and placed a

4   gun to her head, pulling the trigger.  *Id*.  The gun did not fire.  *Id*.  [Woman #4's] purse,

5   cash, pills, and cell phone were then stolen.  *Id*.  Three days later, someone in a black

6   Chevrolet Impala with red and blue lights and a siren tried to pull over a man driving on

7   the southwest side of Tucson.  *Id*.  Eventually, the Impala sped by the man, who saw that

8   its driver was a young man; the man called 9-1-1.  *Id*.

9       On October 19, [2015,] police officers responded to a 9-1-1 call and found [Gerardo

10  Camacho] deceased in the passenger seat of his Honda with a gunshot wound to his head.

11  *Id*.  [Camacho's] friend, [passenger #1], told police the following: [passenger #1] had been

12  in the backseat of the car, with [Camacho] in the passenger['s] seat, and another friend,

13  [driver #1], driving the Honda on the southwest side of Tucson when the car was pulled

14  over by a "dark possibly black Chevrolet Impala or Malibu" that had red and blue lights.

15  *Id*.  When the Honda pulled over, a white Dodge truck pulled in front of it, blocking it from

16  escape[.]  *Id*.  [S]everal masked men came out of the Chevrolet and the Dodge, and pointed

17  guns at the occupants of the Honda.  *Id*.  The men removed [driver #1] from the driver's

18  seat, and one of them fired at least once, fatally wounding [Camacho].  *Id*.  One of the men

19  then got into the Honda, pointed his gun at [passenger #1], drove the car out into the desert,

20  interrogated [passenger #1] about a "stash house," and eventually told him to run into the

21  desert.  *Id*.  After the men left, [passenger #1] returned and drove the Honda, with

22  [Camacho] still in the passenger seat, to a nearby store and called 9-1-1.  *Id*.  The police

23  found a 7.62 shell casing in the Honda.  *Id*.

24      [Driver #1] generally corroborated [passenger #1's] account, saying they had been

25  pulled over by a dark sedan with red and blue flashing lights, blocked by a white Dodge

26  truck, and armed, masked men dressed in black had emerged from the sedan and truck and

27  surrounded the Honda.  *Id*.  [Driver #1] heard a gunshot and was hit in the face by flying

28  glass.  *Id*.  One of the men pointed a gun at her, asked her who she was, and told her to run

1    away. *Id*.

2        [Camacho's] sister later told police that [Camacho] had been involved in the illegal

3    drug business and that she believed he had a drug deal that evening.  *Id*. at *2.  Officers

4    subsequently received a tip that the black Impala used in these incidents was parked at a

5    rural address on the southwest side of Tucson.  *Id*.  Detectives met with the occupants of

6    the home, who let them onto the property, where they found a black Impala with non-

7    factory grill cut-outs and wiring consistent with grill lights having been installed and

8    removed.  *Id*.  The occupants told detectives their family member, Rafael [Manzo], drove

9    the Impala, it had arrived at the property in the past couple of days, and it belonged to

10   [Manzo's] friend.  *Id*.  Police then executed a search warrant for the address and found 7.62

11   ammunition in [Manzo's] bedroom.  *Id*.

12       Police later obtained a search warrant for Becerra's house in connection with a series

13   of crimes involving individuals using vehicles with red and blue flashing lights and a siren

14   to pose as police officers and conduct traffic stops.  *Id*.  When officers served the warrant,

15   Becerra, Yesenia, [Manzo], and several other people were present.  *Id*.  Officers found

16   several handguns and rifles, ammunition, magazines, a holster, and a manual for a 7.62

17   drum magazine.  *Id*.  Police also found the title for a white Dodge pickup truck owned by

18   Yesenia's sister and a rental agreement showing the house was being rented by Becerra

19   and Yesenia.  *Id*.

20       Becerra was charged with first-degree felony murder, kidnapping, two counts of

21   armed robbery, and two counts of aggravated assault with a deadly weapon.  *Id*.  [Manzo]

22   entered [ ] a plea agreement and testified for the state.  *Id*.  After a jury trial, Becerra was

23   convicted as charged and sentenced to concurrent terms of imprisonment, the longest of

24   which is life in prison without the possibility of release for at least twenty-five years.  *Id*.

25                              **PROCEDURAL HISTORY**

26       **Conviction and Direct Appeal**

27       On July 17, 2018, Becerra was found guilty of first degree felony murder,

28   kidnapping, two counts of armed robbery, and two counts of aggravated assault with a

1    deadly weapon.  (Doc. 14-2 at 10-15.)  He was sentenced to concurrent prison terms, the

2    longest of which was life in prison with the possibility of release after 25 years.  (*Id*. at 51.)

3    On April 17, 2019, Becerra filed a direct appeal arguing the trial court erred by: (i)

4    denying his motion to suppress evidence, and (ii) admitting unduly prejudicial photos into

5    evidence. (Doc. 14-1 at 17-34.)  In a memorandum decision, the Arizona Court of Appeals

6    affirmed Becerra's convictions and sentences.  *See Becerra*, 2020 WL 502976, at \*1-7.

7    **Rule 32 Petition for Post-Conviction Relief**

8    On March 12, 2022, Becerra filed a Rule 32 petition for post-conviction relief

9    ("PCR Petition").  (Doc. 14-1 at 88-107.)  Becerra argued that he received: (i) ineffective

10   assistance of trial counsel for counsel's failure to object to the prosecution's improper

11   vouching during closing argument; and (ii) ineffective assistance of appellate counsel for

12   the failure to raise ineffective assistance of trial counsel on direct appeal.  (*Id*. at 98.)

13   On August 26, 2022, the trial court determined that an evidentiary hearing on the

14   issues raised in Becerra's PCR Petition was appropriate.  (Doc. 14-3 at 52.)

15   **Evidentiary Hearing**

16   On November 14, 2022, the trial court conducted an evidentiary hearing.  (*Id*. at 54-

17   124.)  At the hearing, attorneys Walter Palser and Robb Holmes testified on Becerra's

18   behalf about performance standards for trial and appellate counsel.  (Doc. 14-3 at 61-103.)

19   The court took the petition under advisement.  (*Id*. at 124.)

20   On January 13, 2023, Becerra's PCR Petition was denied.  (*Id*. at 127-137.)  The

21   court concluded that Becerra failed to establish that either his trial or appellate counsel

22   provided representation that fell below objectively reasonable standards.  (*Id*. at 135.)  It

23   added that even if counsel's performance fell below prevailing norms, Becerra failed to

24   demonstrate that such deficient performance prejudiced him.  (*Id*.)  The court stated that it

25   failed to see how an additional, curative instruction on evidence interpretation would have

26   affected the outcome of the case.  (*Id*.)

27   The court also concluded that even without the prosecutor's improper vouching

28   during rebuttal argument, the jury could have relied upon various pieces of evidence to find

- 4 -

1    Becerra guilty. (*Id*. at 135-36.) That evidence included: (i) the fact that Becerra's sister-
2    in-law owned a white Dodge Ram truck that was consistent with the truck used in
3    Camacho's murder; (ii) phone records from Becerra's and Manzo's phones that were
4    consistent with Manzo's testimony about calls between the two men the morning of the
5    murder; (iii) a photograph of an assault rifle with a drum magazine consistent with the
6    caliber of firearm used in the murder taken from Becerra's phone, and a drum magazine
7    manual found in Becerra's home; (iv) Walmart surveillance footage that showed Manzo
8    and a man that Manzo identified as Becerra at the store at a time consistent with Manzo's
9    testimony; (v) a Walmart receipt that showed the purchase of cable ties, beanie caps, and
10   other items consistent with Manzo's testimony; (vi) siren packaging, switches labeled
11   "noise making" and "siren," and a remote control with switches labeled "siren" and "police
12   siren" found in Becerra's home; and (vii) Manzo's presence at Becerra's home at the time
13   the search warrant was served on Becerra, which established that the two men knew each
14   other. (*Id*. at 136.)

15       The court ruled that it could not find any likelihood that it was the prosecutor's
16   impermissible vouching, as opposed to the corroborating evidence, that persuaded the jury
17   to believe Manzo's testimony. (*Id*.) It concluded that Becerra failed to establish that the
18   prosecutor's vouching had any effect on the guilty verdicts, much less that the jury could
19   have reached a different verdict had the improper statement not been made. (*Id*. at 137.)

20       **Petition for Review**

21       On March 22, 2023, Becerra petitioned the Arizona Court of Appeals to review the
22   denial of his PCR Petition. (Doc. 14-3 at 151-75.) Becerra asserted that the trial court
23   erred in denying his PCR Petition by misapplying both prongs of the ineffective assistance
24   standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id*. at 152-75.) He
25   argued that his expert witnesses established deficient performance by his trial and appellate
26   attorneys, that the trial court improperly determined that the witnesses lacked sufficient
27   case information to opine on the prevailing professional norms of fully informed defense
28   attorneys, and that the court misapplied *Strickland's* prejudice prong. (*Id*. at 163-74.)

1        On August 8, 2023, the Arizona Court of Appeals granted Becerra's petition for
2    review, but denied relief.  *State v. Becerra*, No. 2 CA-CR 2023-0071-PR, 2023 WL
3    5058239, at \*4 (Ariz. Ct. App. Aug. 8, 2023).  The court ruled that it was Becerra's burden
4    to overcome the strong presumption that counsel's conduct fell within the wide range of
5    reasonable professional assistance.  *Id*. at \*3.  It observed that to meet his burden, Becerra
6    had to establish that counsel's decisions were not tactical or strategic in nature, but were
7    instead the result of "ineptitude, inexperience, or lack of preparation."  *Id*.  The court ruled
8    that the trial court was not required to accept Becerra's experts' testimony as absolute and
9    that it could rely on its own experience and knowledge in evaluating counsel's strategic
10   choices.  *Id*.  The court concluded that the trial court did not abuse its discretion in
11   determining that Becerra was unable to demonstrate that counsel's failure to object was a
12   result of ineptitude rather than a strategic decision.  *Id*.  The court added that appellate
13   counsel's strategic decision to winnow out weaker arguments on appeal was also an
14   acceptable exercise of professional judgment.  *Id*.  The court rejected Becerra's assertion
15   that the trial court misapplied *Strickland's* prejudice prong, ruling that that trial court
16   properly considered whether it was "reasonably likely" that counsel's alleged errors
17   changed the outcome of Becerra's trial or appeal.  *Id*. at \*4.

18       On October 10, 2023, Becerra filed a Petition for Review with the Arizona Supreme
19   Court, which the court declined to review.  (Doc. 14-4 at 11-26, 28.)

20   **Federal Habeas Corpus Petition**

21       On May 9, 2024, Becerra filed the § 2254 habeas corpus petition at hand.  (Doc. 1.)
22   Becerra raises three grounds for relief in his petition.  (*Id*. at 6-9.)  He argues that: (i) the
23   prosecutor engaged in impermissible vouching during closing argument; (ii) he suffered
24   ineffective assistance of trial counsel due to counsel's failure to object to the vouching; and
25   (iii) he suffered ineffective assistance of appellate counsel due to counsel's failure to raise
26   the issue as fundamental error.  (*Id*.)  The State filed a limited answer arguing that Becerra's
27   first ground for relief is procedurally defaulted and that his ineffective assistance claims
28   fail on their merits.  (Doc. 14 at 13-26.)  This Report and Recommendation follows.

1

**LEGAL STANDARD**

2    The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs

3    Becerra's petition because he filed it after AEDPA was enacted in 1996. *Lindh v. Murphy*,

4    521 U.S. 320, 336 (1997).  AEDPA substantially limits the power of federal courts to grant

5    habeas relief to state prisoners.  *Hurles v. Ryan*, 752 F.3d 768, 777-78 (9th Cir. 2014).

6    Under AEDPA, a federal court may not grant a prisoner's petition on a claim that was

7    decided on the merits in state court unless the state court's adjudication of the claim: "(1)

8    resulted in a decision that was contrary to, or involved an unreasonable application of,

9    clearly established Federal law, as determined by the Supreme Court of the United States;

10    or (2) resulted in a decision that was based on an unreasonable determination of the facts

11    in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

12    *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

13    "A state court's decision is contrary to clearly established federal law if the state

14    court applies a rule that contradicts the governing law set forth in the Supreme Court's

15    cases or confronts a set of facts that are materially indistinguishable from a decision of the

16    Court and nevertheless arrives at a result different from Supreme Court precedent." *Ayala*

17    *v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016) (cleaned up).  "A state court's decision is

18    an unreasonable application of clearly established federal law if it correctly identifies the

19    governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."

20    *Id*. (cleaned up).  "A state court's factual findings are unreasonable if reasonable minds

21    reviewing the record could not agree with them." *Id*. (cleaned up).  In any case, for habeas

22    relief to be granted, "a state court merits ruling must be so lacking in justification that there

23    was an error beyond any possibility for fairminded disagreement." *Bemore v. Chappell*,

24    788 F.3d 1151, 1160 (9th Cir. 2015) (cleaned up).  In analyzing a § 2254 petition, review

25    is limited to the record that was before the state court that adjudicated the merits of the

26    claim. *Pinholster*, 563 U.S. at 181.

27

**DISCUSSION**

28    Becerra brings his federal habeas petition raising one claim of prosecutorial

- 7 -

1  misconduct and two claims of ineffective assistance of counsel.  (Doc. 1 at 6-9.)  Becerra's

2  prosecutorial misconduct claim is procedurally barred from review, and the Arizona Court

3  of Appeals reasonably applied *Strickland* to both his ineffective assistance claims.  As such,

4  Becerra's petition should be denied and this case dismissed.

5  **I.  Prosecutorial Misconduct Claim Procedurally Barred**

6  A state prisoner is obligated to exhaust available state court remedies before seeking

7  federal habeas review.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is "designed to

8  give the state courts a full and fair opportunity to resolve federal constitutional claims

9  before those claims are presented to the federal courts."  *O'Sullivan v. Boerckel*, 526 U.S.

10  838, 845 (1999).  To exhaust state remedies, "a petitioner must afford the state courts the

11  opportunity to rule upon the merits of his federal claims by fairly presenting them to the

12  state's highest court in a procedurally appropriate manner."  *Date v. Schriro*, 619 F. Supp.

13  2d 736, 762 (D. Ariz. 2008) (cleaned up).  A claim is fairly presented when the petitioner

14  describes both the operative facts and the federal legal theory on which the claim is based.

15  *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The petitioner must also have

16  "characterized the claims he raised in state proceedings *specifically* as federal claims."

17  *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *amended and superseded on other*

18  *grounds*, 247 F.3d 904 (9th Cir. 2001).  In Arizona, unless the prisoner receives a death

19  sentence, the highest court requirement is satisfied when he has fairly presented his federal

20  claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-

21  conviction relief.  *Date*, 619 F. Supp. 2d at 762.

22  In the petition at hand, Becerra incorrectly asserts that his prosecutorial misconduct

23  claim was raised as an issue in his direct appeal, PCR Petition, and Petition for Review.

24  (Doc. 1 at 6; *see also* Docs. 14-1 at 18, 98-105; 14-3 at 152.)  He also mistakenly indicates

25  that he raised the claim with the Arizona Supreme Court, which he did not.  (*Id.*; *see also*

26  Doc. 14-4 at 12.)  Additionally, Becerra fails to argue, much less demonstrate, good cause

27  for the failure to previously raise this claim.  (*See* Doc. 1 at 6-9); *Rhines v. Weber*, 544 U.S.

28  269, 277 (2005) (ruling that a stay and abeyance is only appropriate where there was good

1    cause for the petitioner's failure to exhaust his claims first in state court).  Even if Becerra

2    was allowed to re-plead this claim in state court, the claim would be procedurally barred.

3    *See* Ariz. R. Crim. P. 32.2(a)(3); *Stewart v. Smith*, 536 U.S. 856, 860-61 (2002) (instructing

4    that Rule 32.2(a) is an adequate and independent procedural bar).  Accordingly, Becerra's

5    prosecutorial misconduct claim is technically exhausted but procedurally defaulted and

6    federal habeas relief on this claim should be denied.  *See Cooper v. Neven*, 641 F.3d 322,

7    327 (9th Cir. 2011) ("[I]f a claim is unexhausted but state procedural rules would now bar

8    consideration of the claim, it is technically exhausted but will be deemed procedurally

9    defaulted unless the petitioner can show cause and prejudice.").

10   **II.    Ineffective Assistance Claims Properly Denied on Merits**

11           Habeas relief may be granted for ineffective assistance of counsel claims only if the

12   last reasoned state-court decision unreasonably applied the more general ineffective

13   assistance standard established by *Strickland v. Washington*, 466 U.S. 668, (1984).

14   *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Barker v. Fleming*, 423 F.3d 1085, 1091

15   (9th Cir. 2005) ("When more than one state court has adjudicated a claim, we analyze the

16   last reasoned decision.").  To demonstrate ineffective assistance, the defendant must show

17   "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the

18   defense."  *Hardy v. Chappell*, 849 F.3d 803, 818 (9th Cir. 2016) (citing *Strickland*, 466

19   U.S. at 687).  Deficient performance requires a showing that "trial counsel's representation

20   fell below an objective standard of reasonableness as measured by prevailing professional

21   norms."  *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014).  "A court considering a claim

22   of ineffective assistance must apply a strong presumption that counsel's representation was

23   within the wide range of reasonable professional assistance."  *Harrington v. Richter*, 562

24   U.S. 86, 104 (2011) (cleaned up).  To establish prejudice, the defendant "must show a

25   reasonable probability that 'but for counsel's unprofessional errors, the result of the

26   proceeding would have been different.'"  *Hurles v. Ryan*, 752 F.3d 768, 779 (9th Cir. 2014)

27   (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient

28   to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Here, the last

1   reasoned state-court decision is the Arizona Court of Appeals' ruling affirming the

2   dismissal of Becerra's PCR Petition. (*See* Doc. 14-4 at 3-9.)

3          **A.    Doubly Deferential Review**

4          Since the August 8, 2023 ruling from the Arizona Court of Appeals is the last

5   reasoned state-court decision concerning Becerra's ineffective assistance claims, this Court

6   must determine whether the ruling demonstrates that the Arizona Court of Appeals

7   unreasonably applied *Strickland* to the facts of his case. *See Harrington*, 562 U.S. at 101

8   ("The pivotal question is whether the state court's application of the *Strickland* standard

9   was unreasonable."). This is different from determining whether defense counsel's

10  performance fell below *Strickland's* standard. *Id*. For purposes of state prisoner's habeas

11  corpus petition, "an *unreasonable* application of federal law is different from an *incorrect*

12  application of federal law." *Id*. (cleaned up). "The prisoner must show that the state court's

13  decision is so obviously wrong that its error lies beyond any possibility for fairminded

14  disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (cleaned up). "This is a difficult

15  to meet and highly deferential standard …, which demands that state-court decisions be

16  given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (cleaned up). If the state court

17  ruling identifies the correct governing legal principle in existence at the time, it is the

18  defendant's burden to prove that the decision unreasonably applied that principle to the

19  facts of his case. *Id*. at 181-82. Where ineffective assistance is alleged in a post-AEDPA

20  federal habeas petition, a court's review is "doubly deferential." *Knowles*, 556 U.S. at 123.

21          **1.    *Strickland* Reasonably Applied to IAC Claims**

22          In his Petition for Review, Becerra asserted that the trial court erred by misapplying

23  both prongs of *Strickland's* ineffective assistance standard. (Doc. 14-3 at 161-74.) He

24  argued that his expert witnesses established that his trial and appellate attorneys performed

25  deficiently, that the trial court improperly determined that his witnesses lacked sufficient

26  information to opine on the prevailing professional norms of fully informed defense

27  attorneys, and that the court misapplied *Strickland's* prejudice prong. (*Id*. at 163-74.)

28

1    In the memorandum decision affirming the trial court's ruling, the Arizona Court of

2  Appeals correctly identified *Strickland* as the relevant rule-making authority for analyzing

3  ineffective assistance claims.  (Doc. 14-4 at ¶ 11.)  The court also gave proper deference to

4  the strategic decisions of trial counsel, aptly observed that it was required to consider

5  counsel's conduct based on the facts of the entire case, and explained that it was Becerra's

6  burden to establish that trial and appellate counsel's strategic decisions were unreasonable.

7  (*Id*. at ¶¶ 12-13.)  The court properly observed that the trial court considered and weighed

8  Becerra's expert testimony as the factfinder in his post-conviction proceeding and that in

9  weighing the testimony, the trial court was not required to accept the testimony as absolute.

10  (*Id*. at ¶¶ 14-15.)  The court affirmed the determination that Becerra failed to carry his

11  burden to show deficient performance by his trial attorney because he did not demonstrate

12  that counsel's failure to object was a result of ineptitude rather than a strategic choice.  (*Id*.

13  at ¶ 15.)  The court also affirmed the ruling that Becerra failed to demonstrate his appellate

14  attorney's strategic decision to winnow out weaker arguments on appeal was the result of

15  ineptitude, inexperience, or lack of preparation.  (*Id*. at ¶ 16.)

16    In addition to affirming that Becerra failed to demonstrate deficient performance by

17  his trial or appellate attorneys, the Arizona Court of Appeals concluded that the trial court

18  used the correct standard to rule that Becerra failed to demonstrate *Strickland's* prejudice

19  prong.  (*Id*. at ¶¶ 17-18.)  The court ruled that to demonstrate prejudice, the defendant must

20  show "that the decision reached would reasonably likely have been different absent the

21  [alleged] error."  (*Id*. at ¶ 18.)  The court ruled that this language is consistent with the

22  standard set forth by the Arizona Supreme Court in *State v. Lee*, 689 P.2d 153 (Ariz. 1984),

23  and employed by the trial court in its decision denying Becerra post-conviction relief.  (*Id*.)

24  This Court finds that the conclusions drawn by the Arizona Court of Appeals in affirming

25  the trial court's dismissal of Becerra's PCR Petition were not objectively unreasonable.

26  Becerra fails to provide any argument(s) to the contrary.  (*See* Doc. 1 at 6-9); *James v.*

27  *Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by

28  a statement of specific facts do not warrant habeas relief.").  Accordingly, Becerra's

1   ineffective assistance claims should be denied.

2                              **RECOMMENDATION**

3          For the foregoing reasons, the Magistrate Judge recommends that the District Court

4   DENY Becerra's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person

5   in State Custody, (Doc. 1), and dismiss with prejudice this case. Pursuant to 28 U.S.C.

6   § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

7   written objections within fourteen (14) days of being served with a copy of this Report and

8   Recommendation, and a party may respond to another party's objections within (14) days

9   after being served with a copy.  No replies shall be filed unless leave is granted by the

10  District Judge.  If objections are filed, the parties should use the following case number:

11  **CV-24-239-JAS**.  Failure to file timely objections to any of the Magistrate Judge's factual

12  or legal determinations may result in waiver of the right of *de novo* review.

13

14          Dated this 18th day of March, 2025.

15

16

17                                              Honorable Bruce G. Macdonald
                                                United States Magistrate Judge
18

19

20

21

22

23

24

25

26

27

28